IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| FRANCES V. BYRON, )<br> )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>EMC MORTGAGE CORP., *et al.*, )<br> )<br>  Defendants. ) | Civil Action No. 3:09-CV-197-HEH |

## MEMORANDUM OPINION
(Setting Aside Clerk's Entry of Default)

This matter is before the Court on the Motion to Set Aside Entry of Default (Dkt. 11) jointly filed by Defendants EMC Mortgage Corporation ("EMC") and Bear Stearns Residential Mortgage Corporation ("Bear Stearns"). After making their first appearance in this case a full 34 days after a response was required under the Federal Rules, Defendants now ask this Court to set aside the Clerk's entry of default and to permit them to file a responsive pleading so that this case may proceed to a disposition on the merits. The parties have filed memoranda of law and exhibits in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid the decisional process. Because Defendants seem to have particularly compelling defenses to Plaintiff's allegations and because Plaintiff has not been unduly prejudiced by Defendants' untimely response, Defendants' Motion will be granted and the Clerk's entry of default set aside.

**I.**

In December of 2006, Plaintiff obtained a $280,000.00 loan ("2006 Loan") from Defendant Bear Stearns[1] which she apparently used to purchase a residence in Chesapeake, Virginia.[2] In connection with the 2006 Loan, Bear Stearns simultaneously took a security interest in Plaintiff's Chesapeake property. This security interest, Plaintiff avers, required Bear Stearns to furnish Plaintiff with two copies of a written notice of her right to rescind the loan ("Rescission Notice") under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and associated federal regulations. *See, e.g.*, 12 C.F.R. § 226.23(a)-(b).

Sometime before she filed this action, Plaintiff refinanced the 2006 Loan with a different lender, satisfying the original Bear Stearns note in full. Accordingly, Defendants represent that Bear Stearns duly recorded a certificate of satisfaction of the original 2006 Loan in January of 2009. Nevertheless, Plaintiff now contends that she is entitled to rescission, recoupment of all costs associated with the loan, and both actual and statutory damages under TILA because Bear Stearns provided Plaintiff with only a single copy of the Rescission Notice in December of 2006 instead of the two copies required by federal regulations. *See* 12 C.F.R. § 226.23(a)-(b). Defendants, in turn, have responded with a form executed by Plaintiff on December 8, 2006 acknowledging that she did, in fact, receive two copies of the Rescission Notice. *See* Def. Br. Ex. A.

---

[1] As the successor in interest to the now-defunct Defendant Bear Stearns, JP Morgan Chase is presently handling the defense of Plaintiff's action.

[2] A subsidiary of Bear Stearns, Defendant EMC allegedly began servicing Plaintiff's loan on December 10, 2006.

Plaintiff filed the present action on April 1, 2009 and subsequently served both Defendants on April 10, 2009.[3] Neither party took any further action until after May 20, 2009, when the Clerk advised Plaintiff that Defendants had failed to answer or otherwise timely file a responsive pleading. Accordingly, Plaintiff requested entry of default and moved for default judgment on May 29, 2009. After the Clerk entered default on June 2, 2009, both Defendants immediately filed this joint Motion to Set Aside Entry of Default on June 3, 2009. Altogether, Defendants' first appearance in this case on June 3 came 34 days after the deadline for filing an answer or other responsive pleading under the Federal Rules.

Defendants attribute their delinquence to a clerical error in the intake process of their corporate legal department, which apparently receives over 3,000 legal documents a day. Def. Br. Ex. B at 1-2. Attributing Defendants' delay to a "casual disregard for the Federal Rules of Civil Procedure", Plaintiff, of course, opposes Defendants' attempt to set aside the entry of default and seeks a hearing on damages so that default judgment may be entered against Defendants.

## II.

This Court may only set aside the Clerk's entry of default against Defendants for "good cause". Fed. R. Civ. P. 55(c). Relief from a default is generally available "where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

---

[3] In Count I, Plaintiff seeks rescission of the 2006 Loan and in Count II seeks statutory damages under TILA.

3

Whether a party has acted with sufficiently reasonable diligence to warrant setting aside an entry of default "must be gauged in light of the facts and circumstances of each" individual case. *Id.* And to "establish the existence of a meritorious defense", a defaulting party need only make a basic "proffer of evidence, which, if believed, would permit [a trier of fact] to find for the defaulting party." *Id.* (citing *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 n.8 (4th Cir. 1974)).

Of particular importance when considering whether to grant relief from default is the degree of personal responsibility borne by the defaulting party. *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987); *see also Moradi*, 673 F.2d at 728. A "blameless party [should] not be disadvantaged by the errors or neglect of his attorney." *Moradi*, 673 F.2d at 728. In exercising its considerable discretion in granting relief from default, this Court must also consider prejudice, if any, to the Plaintiff; whether Defendants have a history of dilatory action; and the availability and effectiveness of sanctions short of default. *Lolatchy*, 816 F.2d at 953.

These legal guideposts and the overarching policy of the Federal Rules favoring "dispositions of claims on their merits", *see Moradi*, 673 F.2d at 727 (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1982)), thus guide the Court's consideration of whether the circumstances of this case warrant setting aside Defendants' default.

### III.

### A.

According to an affidavit filed by Defendants, their failure to file a timely response

was caused by an error in their legal department's intake process that inadvertently resulted in the Complaint being forwarded to the wrong departmental section, where it languished for some time. Def. Br. Ex. B. at 1. Upon learning of Plaintiff's pending request for default for the first time on June 1, 2009, Defendants apparently retained outside counsel immediately and filed this Motion just two days later. Defendants thus contend that their default should be set aside because they "acted immediately upon learning of the" action and therefore took "reasonably prompt action" to address their failure to answer Plaintiff's Complaint. Def. Br. at 4. Plaintiff responds by suggesting that Defendants either intentionally disregarded Plaintiff's Complaint for some unspecified reason or had "no reasonable system in place to deal with federal complaints." Pl. Br. at 4. In any event, Plaintiff argues, the error was attributable to Defendants themselves, not their counsel, and thus the Court should not excuse their late response.

That Defendants' default was their own mistake—and was not caused by their attorneys' error—certainly counsels against setting aside their default. *See Moradi*, 673 F.2d at 728 (indicating preference for granting relief when default is attributable to counsel, not the party itself). There is no basis, however, for crediting Plaintiff's insinuation that Defendants intentionally disregarded this action. Indeed, such action by sophisticated corporate defendants—who apparently are highly familiar with the legal system and the consequences of completely ignoring a lawsuit—would be unlikely. And Defendants' representation that their legal department, which seems to be subdivided into sections that handle discrete types of cases, successfully processes over 3,000 legal documents each day

belies Plaintiff's suggestion that Defendants had "no reasonable system in place to deal with federal complaints." Pl. Br. at 4; *see also* Def. Br. Ex. B at 1-2.

Instead, the facts and circumstances of this case suggest that Defendants' failure to respond to the Complaint was likely an inadvertent and unfortunate oversight. That they immediately retained outside counsel and sought to have their default set aside within days demonstrates that "there was no delay here once the default was discovered." *Moradi*, 673 F.2d at 728. The Fourth Circuit previously has granted relief from default where the delay was considerably longer. *See, e.g., Lolatchy*, 816 F.2d at 952 (granting relief from default where defendant waited over nine months before seeking to set aside default). Moreover, this case had been pending for just two months when default was entered. Defendants' prompt response to the Clerk's entry of default thus counsels in favor of granting them relief under Rule 55(c) for good cause shown.

### B.

To obtain relief from a default under Rule 55(c), Defendants must further demonstrate that they have a meritorious defense to Plaintiff's claims by making a proffer of evidence "which, if believed, would permit [a trier of fact] to find for the defaulting party." *Moradi*, 673 F.2d at 727 (citing *Central Operating Co.*, 491 F.2d at 252 n.8). Here, Defendants argue that good cause exists to excuse their default because they have strong factual and legal defenses to both Counts I and II of Plaintiff's Complaint.

### 1.

Plaintiff's claims are premised solely upon Defendants' alleged failure to provide her

with two copies of the Rescission Notice as required by TILA and its associated regulations. *See* 15 U.S.C. §§ 1631, 1635(a); 12 C.F.R. § 226.23(b). Because Defendants provided her with only a single copy of the Rescission Notice, Plaintiff contends that she has the right to rescind the 2006 Loan, to recover all costs and fees, and to obtain statutory damages.

In support of their Motion, however, Defendants have responded with a form signed by Plaintiff on December 8, 2006 ("Acknowledgment Form") in which she acknowledged receiving *two copies* of the Rescission Notice. As Plaintiff herself notes, this Acknowledgment Form is sufficient to create a rebuttable presumption that she did, in fact, receive two copies of the Rescission Notice at issue, not one as Plaintiff alleges. *See* 15 U.S.C. § 1635(c); Pl. Br. at 6. Beyond the bare allegations of her Complaint, Plaintiff has submitted nothing to rebut the presumption created by the Acknowledgment Form. This document alone, then, would be sufficient to "permit [a trier of fact] to find for the defaulting party" on Counts I and II of Plaintiff's Complaint, since it refutes the key factual allegations that underpin Plaintiff's claim. *Moradi*, 673 F.2d at 727 (citing *Central Operating Co.*, 491 F.2d at 252 n.8).

2.

Defendants have outlined at least one potentially meritorious legal defense to Plaintiff's claims as well. Plaintiff's Complaint alleges that she repaid the 2006 Loan in full prior to filing this action. Compl. ¶ 13. Apparently unconcerned that her admitted satisfaction of the 2006 Loan leaves nothing for the Court to rescind, Plaintiff now seeks rescission of the loan and recoupment of costs under TILA because of Defendants' alleged

7

failure to provide her with two copies of the Rescission Notice.

Defendants admit that "the Fourth Circuit has not expressly addressed the issue of whether a borrower can rescind a loan after it has been refinanced" and thus repaid in full. Def. Br. at 5. They contend, however, that several Fourth Circuit decisions, when read together, strongly suggest that the equitable remedy of rescission is unavailable in such circumstances, even under TILA. *See* Def. Br. at 5-6 (citing both *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 819 (4th Cir. 2007) and *Jones v. Saxon Mortgage*, 537 F.3d 320, 327 (4th Cir. 1998)). This Court agrees.

In support of her claim for rescission, Plaintiff relies solely on Section 1635(a) of TILA, which provides:

> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later . . ..

15 U.S.C. § 1635(a). The Fourth Circuit has emphasized that "although the right to rescind" a loan under TILA is statutory, "it remains an equitable doctrine subject to equitable considerations." *American Mortgage Network, Inc.*, 486 F.3d at 819 (quoting *Brown v. National Permanent Federal Savings & Loan Ass'n*, 683 F.2d 444, 447 (1982)). And the Fourth Circuit has further observed that the "equitable goal of rescission under TILA is to restore the parties to the status quo ante." *Id.* (citing *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003)).

Because the Plaintiff in this case admits in her Complaint that she refinanced her

8

mortgage and repaid the 2006 Loan in full, the Court cannot return the parties to the status quo ante—nothing remains of the 2006 Loan for this Court to rescind. Moreover, Defendants represent that Bear Stearns recorded a certificate of satisfaction of the 2006 Loan in January of 2009. Accordingly, Plaintiff's own allegations may very well foreclose the relief she seeks and likely would permit this Court to find in Defendants' favor on Count I for rescission of the 2006 Loan as a matter of law. Based on the presumption created by the Acknowledgment Form and the apparent legal deficiencies in Plaintiff's claim for rescission, the Court concludes that Defendants have shown that they possess plausible—if not compelling—legal and factual defenses to Plaintiff's claims. *See Moradi*, 673 F.2d at 727.

### C.

The Fourth Circuit has also identified several relevant factors that inform a district court's broad discretion in deciding whether to grant relief from a default under Rule 55(c). These considerations include: the degree of Defendants' personal responsibility for the default; prejudice, if any, to the Plaintiff; whether Defendants have a history of dilatory action in the case; and the availability and effectiveness of less drastic sanctions. *Lolatchy*, 816 F.2d at 953-54.

Apart from the fact that Defendants' themselves—and not their attorneys—bear principal responsibility for their default, all other relevant factors counsel in favor of setting aside the default in this case. Other than their belated appearance in this action, Defendants' have no record of dilatory or obstructive conduct—indeed, they have no history

9

of action whatsoever other than the present Motion. Nor has Plaintiff identified any lasting prejudice she has suffered as a result of Defendants' tardy response other than the costs associated with obtaining default and responding to this Motion.

Any financial prejudice suffered by Plaintiff can be fully remedied by sanctions well short of outright default, such as requiring Defendants to reimburse all costs incurred by Plaintiff in seeking both default and default judgment and in responding to this Motion. *See Lolatchy*, 816 F.2d at 953 (finding district court abused its discretion in refusing to set aside default partly because the defaulting party's attorney "could have been charged with all the costs and expenses attendant to the delay"). Though Defendants themselves are responsible for their default in this case, the several factors identified by the Fourth Circuit, on balance, support a finding of good cause under Rule 55(c) to excuse their default.

## IV.

The Court thus concludes that Defendants have demonstrated good cause under Rule 55(c) to set aside the Clerk's entry of default in this case. Upon learning of the pendency of this action, Defendants proceeded with dispatch in seeking to set aside the default. It also appears that the Defendants' have particularly meritorious factual and legal defenses to what is, at best, a tenuous claim for relief by Plaintiff. Recognizing that Rule 55(c) should be "liberally construed . . . to provide relief from the onerous consequences of defaults", *Lolatchy*, 816 F.2d at 954 (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)) (internal quotation marks omitted), the Court will grant Defendants' Motion to Set Aside Entry of Default. To remedy any financial prejudice suffered by Plaintiff, the Court further

will require that Defendants reimburse Plaintiff for all costs and attorneys' fees associated with seeking default and default judgment and with responding to this Motion.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

It is SO ORDERED.

                                                      /s/
                                    Henry E. Hudson
                                    United States District Judge

Date: June 24, 2009
Richmond, VA